# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**ERIC HAISLEY,**

      **Petitioner,**

**v.**                                    **Case No.  8:03-cv-857-T-30TGW**

**SECRETARY, DEPARTMENT OF
CORRECTIONS, et al.,**

      **Respondents.**

_____/

## <u>ORDER</u>

Petitioner, ERIC HAISLEY ("Petitioner" or "Haisley"), a Florida prison inmate proceeding *pro se*, brings this habeas corpus petition pursuant to 28 U.S.C. §2254 (Dkt. #1) challenging his state convictions arising out of the Twelfth Judicial Circuit, Manatee County, Florida, case number 99-3337CF.  The Respondents have responded (Dkt. #9) to which Petitioner has replied (Dkt. #15).

Haisley was charged with three counts of sexual battery on a child under twelve (Counts One, Two and Four), and handling and fondling a child under sixteen (Count Three).  A jury found him guilty as charged on all counts and he was sentenced to life in prison on each sexual battery count with the sentences to run concurrently, and was sentenced to time served on the handling and fondling count.

Petitioner appealed his conviction to the state appellate court raising the following issues:

> 1. The court erred in allowing Dr. Isaac to opine that most cases of gonorrhea in adults would be cured either spontaneously by the body or with antibiotics within several weeks.
>
> 2. The court erred by allowing the jury to consider multiple child hearsay statements.
>
> 3. Appellant's right to a fair trial was prejudiced by the state's improper argument to the jury.
>
> 4. The court erred by denying appellant's motion to dismiss based upon destruction of evidence.

The state appellate court affirmed the convictions without written decision in case number 2D00-2895, Haisley v. State, 799 So. 2d 1037 (Fla. 2d DCA 2001) [table].

Petitioner then filed a *pro se* motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850 raising eight claims of ineffective assistance of trial counsel. Haisley asserted that his trial counsel was ineffective for:

> 1. not moving for mistrial based on a purportedly flawed procedure used to determine whether the state's expert, Dr. Isaac, was qualified to render an opinion;
>
> 2. not objecting and moving for mistrial based on Dr. Isaac's opining on an issue for which he was not an expert;
>
> 3. not investigating the destruction of purportedly exculpatory evidence in presenting the investigative results;
>
> 4. not calling witnesses involved in the destruction of material evidence favorable to Haisley;

5.     not objecting to the life sentences on grounds of vindictiveness;

6.     not having an expert examine Haisley's anatomy and that of the child victim and testify to the results of such examination;

7.     not moving to strike the jury panel on grounds the jury was tainted by contact with the victim's mother; and

8.     not seeking a new trial on grounds the verdict was contrary to the weight of the evidence and insufficiency of the evidence.

The state circuit judge addressed each of the grounds and summarily denied them without a hearing.  Haisley appealed the denial and the state district court affirmed *per curiam* without written decision.  <u>Haisley v. State</u>, case number 2D02-5614 (Fla. 2d DCA 2003) [no table available].  Haisley then filed a motion for rehearing with the appellate court which was denied.  He then timely filed this §2254 petition for habeas relief.

## Section 2254 Petition

In his petition for habeas corpus relief in this Court, Haisley asserts the following grounds:

1.     Due process was denied because of the state's destruction of exculpatory evidence.

2.     Due process was denied because the court allowed a doctor to give an expert opinion in a field outside of his expertise.

3.     Due process was denied by the state's improper argument to the jury.

4.     Trial counsel was ineffective because he failed to move for a mistrial based on the court's using a flawed procedure in determining the qualification of a witness to give an expert opinion.

5.      Trial counsel was ineffective for failing to object and move for a mistrial after the pediatrician gave expert opinions beyond his qualifications and expertise.

6.      Trial counsel was ineffective for failing to investigate the destruction of exculpatory evidence and presenting the findings to the trier of fact.

7.      Trial counsel was ineffective for failing to object to a vindictive sentence.

8.      Trial counsel was ineffective for failing to have a defense expert examine the anatomy of the petitioner and the alleged victim and testify to the results of copulation, if it actually occurs.

9.      Trial counsel was ineffective for failing to move to strike the entire jury panel because of taint by contact with an interested party.

10.     Trial counsel was ineffective for failing to move for a new trial based on the verdict being contrary to the weight of the evidence and the evidence being legally insufficient to warrant a conviction.

## <u>Discussion</u>

At the outset, the Court notes that many of Petitioner's grounds concern evidentiary issues that arose during his trial.  It may be that Petitioner misperceives this Court's role in a habeas proceeding where a state court conviction is concerned.  This Court does not sit as a super appellate court to review state evidentiary rulings.  That is for the state appellate courts.  Federal courts in habeas proceedings review state evidentiary questions only if the alleged error is of such magnitude as to render the state court defendant's trial fundamentally unfair.  <u>See</u> <u>Estelle v. McGuire</u>, 502 U.S. 62, 72 (1991).  If the evidence at issue is not material enough to be considered crucial, critical, or a highly significant factor so as to deny

the petitioner a fundamentally fair trial, habeas corpus relief should be denied.  <u>Jameson v.</u>

<u>Wainwright</u>, 719 F. 2d 1125, 1127 (11th Cir. 1983).

This Court is also concerned that Petitioner may misperceive this Court's role because many of the cases cited by Petitioner were decided prior to the adoption of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which became effective on April 24, 1996.  Section 2254, as amended by AEDPA, greatly limited the role of the federal district court in habeas proceedings.

## Standard of Review

Since Petitioner's conviction was entered after the enactment of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), his petition is subject to the provisions thereof.  When a federal court is asked to review a criminal conviction from state court, 28 U.S.C. §2254 places a heavy burden upon the petitioner.  Habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim resulted in a decision that:

(1)   was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or

(2)   was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. §2254(d); <u>Williams v. Taylor</u>, 529 U.S. 362 (2000).

In <u>Williams v. Taylor</u>, 529 U.S. 362, the Supreme Court held:
Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court

has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Additionally, federal habeas relief is available under the "unreasonable application" standard only if the state court's application of clearly established federal law was "objectively unreasonable." Parker v. Head, 244 F.3d 831, 835 (11th Cir. 2001).

In a proceeding under the second standard (an unreasonable determination of the facts), a state court's determinations of fact shall be "presumed to be correct," and the habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. §2254(e)(1).  This statutory presumption of correctness applies only to findings of fact made by the state court, not to mixed determinations of law and fact. McBride v. Sharpe, 25 F.3d 962, 971 (11th Cir. 1994).

Petitioner also raises several grounds asserting ineffective assistance of counsel. According to clearly established federal law enunciated by the United States Supreme Court, to establish a *prima facie* claim of ineffective assistance of counsel, Petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668 (1984).  Deficient performance is performance which is objectively unreasonable under prevailing professional norms. Strickland, 466 U.S. at 688.  Prejudice results when there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.  Both prongs (deficient performance and prejudice)

must be shown before a petitioner is entitled to habeas relief.  The Eleventh Circuit has held that when applying <u>Strickland</u>, a federal district court may dispose of ineffectiveness claims on either of the two prongs without the necessity of discussing the other.  <u>Oats v. Singletary</u>, 141 F.3d 1018 (11th Cir. 1998).

## **<u>Evidentiary Hearing</u>**

When the petition concerns state court proceedings, the factual basis necessary to support a claim for habeas relief in this Court must be developed in the record of state court proceedings, except under very limited circumstances.  <u>See</u> <u>Breard v. Greene</u>, 523 U.S. 371, 376 (1998).  The provisions of the AEDPA governing evidentiary hearings in federal habeas corpus cases are found at 28 U.S.C. §2254(e)(2), which states:

> (2)  If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that–
>
> A.      the claim relies on--
>
>> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>>
>> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> B.      the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

Consistent with the AEDPA goal of streamlining the habeas process, this provision "expressly limits the extent to which hearings are permissible, not merely the extent to which

they are required." <u>Kelley v. Sec., Dep't of Corr.</u>, 377 F.3d 1317, 1337 (11th Cir. 2004), *cert. denied*, ___ U.S. ___, 125 S.Ct. 2962 (Jun. 27, 2005).

Even if a petitioner convinces the district court that he diligently sought to develop the factual basis of a claim for habeas relief but was denied the opportunity to do so by the state court, the petitioner must still persuade the district court that the facts supporting the claims for which the evidentiary hearing is requested "would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found [the petitioner] guilty of the underlying offense." 28 U.S.C. §2254(e)(2)(B).

Petitioner does not meet either of the exceptions in 28 U.S.C. §2254(e)(2). Therefore, he is not entitled to an evidentiary hearing in this Court. All facts relevant to his claim must be taken, to the extent they exist, from the state court record.

## Discussion

The Court will now address each of Petitioner's claims.

**Ground One:**    Due process was denied because of the state's destruction of exculpatory evidence.

As support for this ground, Petitioner states:

A gonorrhea culture was taken from the alleged victim and the Petitioner sought to compel production of the culture so it could be tested to determine the particular strain which had infected the alleged victim, only to be advised that it had been destroyed. The culture was exculpatory in nature.

This is factually insufficient to support a claim for habeas relief for several reasons.

First, the statement "the culture was exculpatory in nature" is merely conclusory. It does not

explain why the culture would have been exculpatory as to Haisley.  Second, one might infer that since the first sentence refers to the desire to determine "the particular strain," the argument would be that it might show that the culture sample was different from the strain that infected Haisley.  But this Court is not allowed to make that assumption.  It is Petitioner's burden at the state level to make that showing and he did not.  Additionally, this assumption is belied by the facts.  The Court is aware from other arguments made by Petitioner herein that when he was tested he was not infected with gonorrhea.

The facts supporting each ground are required to be set forth in the petition.  It is inappropriate to assert new theories in a reply.  In spite of this, it appears that the Petitioner may have raised an additional theory in his reply, to wit: "(t)he apparent exculpatory nature of the evidence is established by the fact that the alleged child victim tested positive for gonorrhea and the accused petitioner did <u>not</u>."  Since the Petitioner may have meant this as an explanation of his originally intended factual support in his petition, the Court will address this theory as well.  If this is indeed Petitioner's logical argument, the preservation of the gonorrhea culture was unnecessary.  Petitioner's blood test already showed that he did not have gonorrhea.  He was already in a position to argue that he could not have been the person that sexually abused the child since he did not have gonorrhea, and the person that abused the child did have gonorrhea.

More important, ground one fails legally because Petitioner has not shown that the evidence was exculpatory.  The parties agree that this issue is governed by <u>Arizona v. Youngblood</u>, 488 U.S. 51 (1988), which holds that if the exculpatory value of the evidence

is indeterminate and all that can be confirmed is that the evidence was "potentially useful" for the defense, then  a defendant must show that the government acted in bad faith in destroying the evidence.  There was no showing of bad faith involved in the destruction of the gonorrhea culture.  The state court held a hearing on March 24, 2000, on Haisley's motion to compel production of the gonorrhea cultures taken from the child.  The state advised that the cultures had been destroyed, not by the police, but by the Health department who had performed the test.  The Health department considered the cultures biohazardous waste and destroyed them in accordance with their policies after testing.  Far short of bad faith, Petitioner did not even show that the police knew of the evidence at the time of its destruction, much less knew of its potentially exculpatory value.  See Youngblood, 488 U.S. at 57 (presence or absence of bad faith by the police for purposes of the Due Process Clause must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed).

Because ground one fails both factually and legally, it will be denied.

**Ground Two:**          Due process was denied because the court allowed a doctor to give an expert opinion in a field outside of his expertise.

Ground two is a perfect example of a state evidentiary issue resting upon state law. It is not the province of a federal court to reexamine state court determinations on state law questions.  Estelle v. McGuire, 502 U.S. 62, 68 (1991).  Even if this Court could review the state court evidentiary ruling, the ruling does not appear to be an error.  Dr. Isaac, a medical doctor, was qualified as an expert in pediatric sexually transmitted diseases.  He testified

there was no difference between the disease in children or adults.  He was therefore qualified to give his opinion.

Had there been error, it would not have risen to the level of constitutional implications.  State court evidentiary rulings do not rise to the level of due process violations unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.  <u>Montana v. Egelhoff</u>, 518 U.S. 37, 43 (1996).  Such is not the case here.

For these reasons, ground two is denied.

**<u>Ground Three:</u>**      Due process was denied by the state's improper argument to the jury.

In support of ground three, Petitioner makes the following statement:

Among the types of improper comments made were burden shifting arguments, prosecutorial opinions, denigration of petitioner's defense, Golden Rule comments and comments on matters unsupported by the record.  Absent these comments the petitioner would have been acquitted.

The above statement is merely conclusory.  It identifies no particular statements of the prosecutor from which this Court could determine whether he had been deprived of a fair trial.  The burden is on the Petitioner to support his grounds factually.  It is not incumbent upon this Court or the Respondents to search through the record to try to identify the portions to which the Petitioner may be referring.

Therefore, ground three will be denied as being factually and legally insufficient.

**Ground Four:**  Trial counsel was ineffective because he failed to move for a mistrial based on the court's using a flawed procedure in determining the qualification of a witness to give an expert opinion.

**Ground Five:**  Trial counsel was ineffective for failing to object and move for a mistrial after the pediatrician gave expert opinions beyond his qualifications and expertise.

In support of grounds four and five, Petitioner asserts:

The court did not use the proper procedure in determining whether the pediatrician was qualified to offer opinions about the transmission of gonorrhea in adults and as to the capacity of the adult to rid itself of gonorrhea. Had counsel moved for a mistrial, the case would have been reversed.

The pediatrician was not legally qualified to offer opinions on the transmission and treatment of gonorrhea in adults. The unqualified opinion destroyed the significance of the petitioner testing negative for gonorrhea and the alleged victim testing positive. Had counsel objected and moved for a mistrial on said basis, the court would have granted the motion in the trial court or on appeal.

Once again, this is a state law evidentiary issue. Petitioner merely states in conclusory fashion that the pediatrician was not qualified to offer opinions about the transmission of gonorrhea. He points to no specifics in the record to support his claim that a medical doctor who specializes in sexual abuse of children would not be qualified to testify about the transmission of gonorrhea. In any event, there is no reason to believe that the trial court judge, having allowed the testimony over the objections of defense counsel, would have granted a mistrial on the same grounds.

The state trial court, citing the record, properly rejected these same arguments in Petitioner's 3.850 motion. There the court said:

The Court will treat these grounds together because the allegations concern the same issue. Under Ground One, Defendant alleges that counsel was

ineffective for failing to move for a mistrial based on the Court's use of a "flawed procedure" to determine whether the State's expert, Dr. Isaac, was qualified to render an opinion.  Under Ground Two, Defendant alleges that counsel was ineffective for failing to object and move for a mistrial "based on Dr. Isaac opinionating an issue in which he was not an expert.

Under both grounds, the Defendant takes particular issue with Dr. Isaac's testimony on the transmission and treatment of gonorrhea in adults (as well as most of the other evidence admitted at tail (sic)).  Nonetheless, review of the record reveals that defense counsel protected the record and raised numerous objections to Isaac's testimony on these issues.  (T.T. 503-512) Moreover, he had the opportunity to cross-examine Dr. Isaac at length on his field of expertise and to attack his opinions.  (T.T. 512-521, 545-564, 568-571).  Counsel's objections were sufficient to preserve the perceived errors in allowing Dr. Isaac's opinion testimony.  As such, a motion for mistrial was unnecessary and, in any event, would have been addressed to the sound discretion of the trial court.  See Bennett v. State, 823 So. 2d 849 (Fla. 1st DCA 2002) see also Duest v. State, 462 So. 2d 446 (Fla. 1985).

Finally, the Court notes that at bottom, Defendant's arguments under Grounds One and Two amount to little more than an attack on the evidence underlying his convictions.  As such, these perceived evidentiary issues should have been appealed.  They are not now subject to collateral attack.  See Harvey v. Dugger, 656 So. 2d 1253, 1256 (Fla. 1995); Torres-Arboleda v. Dugger, 636 So. 2d 1321, 1323 (Fla. 1994).

This evidentiary issue certainly does not rise to the level of constitutional implications

and therefore fails for the same reasons given for ground two above.

**Ground Six:** Trial counsel was ineffective for failing to investigate the destruction of exculpatory evidence and presenting the findings to the trier of fact.

In support of ground six, Petitioner asserts:

An investigation on the destruction of the gonorrhea culture taken from the alleged victim would have revealed that the state attorney's office deliberately caused the culture to be destroyed after learning of its exculpatory nature and that the destruction of such evidence is contrary to procedure in an ongoing criminal investigation case.  Had counsel properly investigated said acts and

presented the results to the Court, the case would have been reversed for a new trial or dismissed.

The supporting "facts" given by Petitioner are nothing more than conclusory statements. He makes the assumptions that (1) the state attorney's office deliberately caused the culture to be destroyed, (2) after learning of its exculpatory nature, and (3) that is was during "an ongoing criminal investigation." Conjecture and speculation are insufficient to support a claim for habeas relief.

From a review of Petitioner's reply brief, it appears that Petitioner misunderstands the law in this regard. He mistakenly believes that he can allege whatever he wishes in his petition and it must be taken as true unless the trial court judge can refute it from the facts in the record. Otherwise, he contends, the Court must hold an evidentiary hearing to disprove his assertions. For example, in his reply brief, Petitioner states at paragraph seven on pages 20 and 21:

> When an evidentiary hearing is not held, the allegations of a post-conviction motion must be accepted as true, except to the extent that they are conclusively rebutted by the record. Ford v. State, 825 So. 2d 358 (Fla. 2002).

Petitioner misstates the holding of Ford v. State. That case does correctly state the law in Florida concerning allegations that counsel has failed to investigate a particular issue. According to Ford, in order to allege that trial counsel was ineffective for failure to investigate, a petitioner must allege that counsel failed to investigate or call particular witnesses, set forth the identity of the prospective witnesses and the substance of the witnesses' testimony, and explain how the omission of this evidence prejudiced the outcome

of the trial.  <u>Ford</u>, 825 So. 2d at 358.  In his Petition before this Court, Petitioner fails to set forth the identity of any potential witnesses or describe their testimony had they been investigated or called by his attorney.  Absent that, there is no showing of deficient performance or prejudice to Petitioner's case.

For these reasons, ground six is denied.

**<u>Ground Seven:</u>**     Trial counsel was ineffective for failing to object to a vindictive sentence.

In support of ground seven, Petitioner asserts the following:

Prior to trial, the state offered the petitioner a plea bargain of only a couple years imprisonment in exchange for his not going to trial.  After the petitioner's trial and conviction, he was sentenced to life imprisonment.  The facts of the case was the same prior to trial as it was after, and the only reason for the harsh sentence was the petitioner's choice of trial.  Had counsel objected the case would have been reversed because of vindictiveness.

Once again, Petitioner merely makes a conclusory statement.  It appears that Petitioner contends that had his attorney objected about the additional length of sentence over the pre-trial plea offer, "the case would have been reversed."  It is hard to imagine a trial court judge reversing an entire case because of a trial counsel's objection to the length of a sentence given at sentencing (especially the judge that determined the sentence).  Be that as it may, the real issue is whether the sentence given by the trial court after the jury's finding of guilt rises to the level of violating the Petitioner's U. S. constitutional right to due process.  In that regard, Petitioner does not cite to a single case to support his position.  He does not even argue that the sentence was greater than the guideline sentence.

The trial court's ruling on this issue in Petitioner's 3.850 motion appropriately addresses this claim with references to the record.  There, the trial court said:

> Defendant alleges that counsel was ineffective for failing to object to the Court's sentencing him to life imprisonment, after the State had made him a previous plea offer of five years in prison.  Defendant complains that the Court sentenced him "on grounds of vindictiveness."
>
> First this Court notes that the State never extended to the Defendant a plea offer of five years in prison on these charges.  At a hearing on May 25, 2000, on pending  pretrial motions, the prosecutor represented to the Court that the State had authorized a plea deal of ten years in prison, followed by five years on sex offender probation.  After a brief discussion, it was agreed that the Defendant would be given some additional time to consider the offer. (5/25/00 Tr. at 3-6)  Later, during that same hearing, the prosecutor updated the Court, noting the terms of the plea offer.  The Defendant could enter a plea to lewd and lascivious charge and serve ten years in prison, with no probation to follow,  but he could be designated as a sexual predator.  The remaining capital sexual battery counts would be nolle prossed (5/25/00 Tr. at 89-90).  He also stated that the victim's family was not in agreement with the terms of the plea offer and the plea offer was open only until 1 p.m. on May 26, 2000. (5/25/00 Tr. at 90).  Defense counsel indicated he would discuss it again with his client. (5/25/00 Tr. at 90-91).   Thereafter,  on the morning of trial, the prosecutor noted for the Court that the Defendant had rejected the plea offer of ten years.  (T.T. 3-4).
>
> The Defendant's claim that the Court was vindictive in sentencing him is without merit.  A jury convicted the Defendant on three separate counts of capital sexual battery, each carrying a  potential life sentence.  After the jury rendered its verdict,  the State requested that the Court sentence the Defendant to life.  The Court complied with the State's request. (T.T. 1181-1184). The Defendant fails to demonstrate any deficient performance by counsel with regard to his sentence.

Since the Petitioner has not shown that the sentence given by the trial court violates his U. S. constitutional right to due process, this ground will be denied.

**Ground Eight:**     Trial counsel was ineffective for failing to have a defense expert examine the anatomy of the petitioner and the alleged victim and testify to the results of copulation, if it actually occurs (sic).

In his reply, Petitioner concedes that the state's argument on this ground is correct.

The Court appreciates the candor on the part of the Petitioner.  Ground eight is denied.

**Ground Nine:**     Trial counsel was ineffective for failing to move to strike the entire jury panel because of taint by contact with an interested party.

In support of ground nine, Petitioner asserts:

After the jury had been sworn in, Lisa Haisley, the mother of the alleged victim, contacted a juror sworn in to preside over the case. Ms. Haisley talked about this case with the juror (while it was pending) and her comments was (sic) expressed to the other jurors tainting the entire panel.  Had counsel moved for the striking of the panel it would have been granted as a matter of law.

Petitioner has again made conclusory allegations concerning facts in the case.  He either must point to some portion of the record to support his allegations or give the identities, addresses, and substance of the  testimony of witnesses who, if called, would support these allegations before a court can determine whether the assistance of counsel has been ineffective.  Ford v. State, 825 So. 2d 358 (2002).  And, to maintain a claim that a biased juror prejudiced him, he must show that the juror was actually biased against him.  Goeders v. Hundley, 59 F. 3d 73 (8th Cir. 1995).

The record does not support Petitioner's allegations.  The trial court had several inquiries into this issue and there was never any indication that the juror in question was actually biased or that the entire jury pool had been tainted.  The trial court correctly disposed of this issue on Petitioner's 3.850 motion where it said:

Defendant alleges that counsel was ineffective for failing to move to strike the entire jury panel because the panel had been tainted by contact with an interested party. Defendant alleges that witness, Lisa Haisley (the victim's mother and Defendant's ex-wife) "directly and expressly" talked about the case in the presence of Juror Johnson, who had been sworn and seated on the Defendant's jury panel.  The record expressly refutes the Defendant's claims.

The Court made several inquiries into this matter during trial.  Initially, defense counsel advised the Court that a county jail inmate by the name of Samuel Edwards had, at some point,  overheard a conversation between his wife (Yolanda Edwards) and Juror Johnson about the alleged abuse in this case.  The inmate was produced before the Court, but could not relate any details of the conversation, nor could he recall a time frame when the conversation occurred.  (T.T. 461-470).  The Court then inquired of Juror Johnson whether she was acquainted with witness Lisa Haisley.  She indicated she had seen her, but did not know her and had never had any conversation with her or Yolanda Edwards  about a child being molested.  (T.T. 470-472).  As a result of these inquiries, the Court reserved ruling on the issue of excusing Juror Johnson, pending an inquiry of Yolanda Edwards.  (T.T. (472)

Subsequently, Yolanda Edwards was produced before the Court and testified that Juror Johnson was her cousin and she watched her baby.  She denied having any conversations with Johnson with regard to issues involving Lisa Haisley or any of her children and expressly denied the conversation previously testified to by Samuel Edwards. (T.T.609-611).  After followup questions by the State and defense counsel, the Court denied the defendant's motion to challenge Juror Johnson.  (T.T. 612-613).

Subsequently, however, Juror Johnson requested to address the Court.  She indicated she had been contacted by her cousin, Yolanda Edwards, and Edwards told her that Lisa Haisley told her (Johnson) not to talk about the case.  Johnson indicated that she could no longer be fair and impartial with regard to the case, and the Court excused her and seated the alternate juror. (T.T. 709-716).  Defense counsel also requested a mistrial, but the Court denied the motion.  (T.T. 712, 717).  Subsequently, the Court inquired again of Lisa Haisley.  She indicated she knew Johnson by sight, but denied contacting Johnson or any of her relatives with regard to the case and denied knowing Yolanda Edwards.  (T.T. 1173-1175).  The Court concluded it had no evidence of juror misconduct in the case. (T.T. 1175).

Determinations of whether substantial justice requires a mistrial and related questions as to juror misconduct are"both lodged within the sound discretion of the trial court." Dujour v. State, 495 So. 2d 154, 163 (Fla. 1984). In this case, defense counsel brought all allegations of juror taint to the attention of the Court and appropriate inquiries were made. Although the Defendant alleges that Juror Johnson discussed the case with Lisa Haisley and the related the contents of that conversation to the rest of the jury panel, he offers nothing to support that allegation. Defendant's counsel brought his concerns to the Court and moved for a mistrial. The Court inquired of all parties and exercised its discretion in finding that there was no misconduct in this case. Therefore, the Court cannot find that counsel's performance was deficient.

The Court also notes that defense counsel did move for a mistrial on this juror contact issue and the motion was denied. A motion for mistrial is tantamount to striking the jury panel and starting over, the same as striking the panel. Therefore, Petitioner is factually incorrect when he states that his counsel did not move to strike the panel. Because Petitioner fails to factually support his allegations and because there is no showing of deficient performance on the part of his counsel, ground nine will be denied.

**Ground Ten:**        Trial counsel was ineffective for failing to move for a new trial based on the verdict being contrary to the weight of the evidence and the evidence being legally insufficient to warrant a conviction.

In support of ground ten, Petitioner asserts:

There are substantial inconsistencies within the testimony of the alleged victim and he admitted he lied and/or made up some of the descriptions of the events. There is [sic] conflicts in the testimony of a witness present on the date of the alleged event and a substantial delay in the reporting of the allegations. Had counsel properly moved for a new trial on the basis stated herein, it would have been granted and the conviction reversed.

Again, Petitioner's assertions are conclusory in nature. Petitioner points to no particular part of the record to show why the evidence was insufficient to support the

conviction.  (The Court notes that this issue was not raised when it should have been, on direct appeal at the state level.)

Petitioner does point out some inconsistencies in the testimony of some witnesses, including the victim.  But this is true of almost all cases, criminal or civil.  These witnesses were subjected to a full cross-examination by defense counsel and it was up to the jury to resolve any inconsistencies.  The testimony of the victim together with the testimony of Dr. Isaac as to the results of his physical examination and the testimony of defendant, who took the stand in his own behalf, shows that there was sufficient evidence to support the conviction in this case.  Therefore this ground will be denied.

## CONCLUSION

Having addressed each ground and having determined that each claim should be denied, the Petition for habeas relief will be denied.

It is therefore ORDERED AND ADJUDGED that:

1.    The petition for writ of habeas corpus (Dkt. #1) is DENIED.

2.    The Clerk is directed to enter judgment in favor of Respondents and against the Petitioner, terminate any pending motions, and close this file.

**DONE** and **ORDERED** in Tampa, Florida on May 4, 2006.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

F:\Docs\2003\03-cv-857.Haisley order.frm